IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**ROBERT PETERS**                                                                    **PLAINTIFF**

**V.**                                    **2:23CV00135 JM**

**SOUTHEAST ARKANSAS BEHAVIORAL**
**HEALTHCARE SYSTEM, INC.**                                         **DEFENDANT**

**ORDER**

        Pending is the Motion for Summary Judgment filed by Defendant Southeast Arkansas Behavioral Healthcare System, Inc. Plaintiff has responded to the motion and the Defendant filed a reply. The motion is ripe for consideration.

1. Undisputed Facts

Plaintiff Robert Peters was hired by Defendant in 2015 and worked there until he was terminated on June 16, 2023. (Am. Comp., ECF No. 5 at ¶¶ 13, 50). Mr. Peters' job title was Treatment Manager for the Rehabilitation Day Service Program ("RDS") (ECF No. 20-3) and Qualified Behavior Health Provider. (ECF No. 25-1, 20-5). Plaintiff was provided and signed acknowledgements for all Defendant's business and conduct policies when he was hired in 2015. (ECF Nos. 20-6, 20-7).

        In Plaintiff's 2021 and 2022 annual evaluations, he received satisfactory and very good ratings. However, in his 2021 evaluation Sherrie James, CEO and President of Defendant, noted that Plaintiff "need[ed] to work on his communication as noted above, especially within his work team." (ECF No. 20-3 at p. 3). In his 2022 evaluation, James noted that Plaintiff had "experienced both personal and professional challenges over the last year but has worked through them. He continues to be an effective group leader for the RDS population." (ECF NO. 20-4 at p. 3.)

        On October 26, 2022, one of Plaintiff's clients filed a complaint with Defendant about Plaintiff claiming that Plaintiff had made a statement to her that violated Defendant's policies. (ECF No. 5 at ¶28; 20-5). Plaintiff denied making the statement. (ECF No. 20-5). Plaintiff was suspended pending an investigation. *Id.* After the investigation, Plaintiff was given a verbal warning regarding careful

communication with clients in person and in writing. *Id.;* ECF No. 5 at ¶31. Sherrie James, CEO and President of Defendant, told Plaintiff that he received the warning for making a clinical statement in the client's medical record that was outside the scope of his practice because he was not a licensed professional who could assess a client's clinical condition. (James Statement, ECF No. 25-2). Plaintiff's suspension was lifted on November 8, 2022, and he was paid for the time he was out. (ECF No. 5 at ¶30).

Three days later, Plaintiff submitted a request for sick leave for two weeks including the week of Thanksgiving. Plaintiff attached a note from Dr. Seth M. Kleinbeck, his physician, stating that Plaintiff should be off work until November 28, 2022 "due to issues he is dealing with that will require some time to resolve." (ECF No. 20-13 at p. 4). The request was first denied on November 14, 2022. *Id.* at p. 3; ECF No. 25-2. Plaintiff's supervisor called Plaintiff and explained that because his requested leave time was so close to the Thanksgiving holidays, he would need to work because several other employees had already requested time off and been approved for it. (Am. Comp., ECF No. 5 at ¶ 37; ECF No. 25-2). Plaintiff then made the request as FMLA leave, which was approved retroactively on November, 30, 2022. ECF No. 5 at ¶41). Plaintiff was also granted sick leave for April 10, 2023, and June 8-9, 2023. (ECF No. 20-13).

In May, 2023, Sheriee Smith became Plaintiff's supervisor. Smith was a licensed social worker and the County Director for the Stuttgart office of Southeast Arkansas Behavioral Healthcare System. Smith documented Plaintiff's behavior on May 19-20, 2022 and June 12, 2022. (Pl's Resp to Def's Statement Of Undisputed Facts, ECF No. 25 at p. 7).

> Friday, May 19th:
> At a meeting was provided an all about me form and the reason it was given, but couldn't wait to leave that when I said "alright" he hit his hand on the table and jumped up saying "so I can leave now." The response I provided was no and that I was almost done.
>
> The purpose of the meeting was me addressing the healing I know some of them were going through from the previous supervisor.
>
> Monday, May 22nd:
> I arrived to work with his all about me form [sic] placed on my desk with only his name on it. When speaking to [him] individually he stated his reason for not completing the form. I not only shared that the form was not intended to be intrusive but it also helps me when wanting to provide awards or do something special for the team. He expressed not interested only want to come to

> work and do his job. Then asked if he could have the paper back so he can write NA to all the questions. My response was no, did not want him to do anything extra than what he was required to do.
>
> ***
>
> On Monday June 12th:
> His return back to work – although placed on every email that was sent, was provided a verbal update on changes and work that has been put in place:
> Cleaning and organization of the cabinets
> Reminder of the office in RDS is to be utilized do one on one with clients
> One on One with clients in addition o doing group will be expected for the sake of the clients to share information that is too personal to share in group
>
> ***
>
> As I was ending, during the whole time standing, looking away, shaking his head, heavy sighing. He then stated he didn't know why I was making more work for him to do and before he could continue I stated "If you have any questions or concerns please come speak with me about it." He then responded with "pshh naw, nevermind I don't have any questions or concerns."
>
> ***
>
> As I am leaving he is now saying something, but did not hear him and turned around and asked if there was something wrong if there were any questions. He looked up and sighing and gave a face and said no, I asked if there was a problem and his of no, I stated there appears to be one. He responded with "it's a lot of things that appears to be things but they aren't."

Smith authored a letter stating:

> Mr. Peters, in front of other staff or individually in meetings with me, would challenge the statements, information and direction given by me regarding duties of job requirement. The disrespectful attitude and insubordination would be demonstrated by heavy sighing, rolling of the eyes; using his hands in a gesture to dismiss me; questioned why he needed to be part of any staff meeting, why he needed to do any changes to his role and client care. Additional behaviors demonstrated by action or verbally informing me what he was and was not going to do "all I want to do is just come and do my job and go home"; an incident where he is banging on my office door that was already opened while I was on the phone, speaking loudly being disruptive; and actively ignoring me while I am speaking to him.

(ECF No. 25-11).

Plaintiff took vacation for two weeks at the end of May, 2023. (Pl's Dep., ECF No. 25-1 at p. 1). When he returned on Monday, June 12, 2023, he submitted a request for FMLA leave to begin on Wednesday, June 14, 2023 through June 23, 2023. (ECF No. 20-14). The request was approved by Smith on November 14, 2023. *Id.* Plaintiff was terminated by Sherrie James and Lavonda Cunny, the Director of Human Resources, on June 16, 2023 for inappropriate behavior toward Smith on multiple occasions, including insubordination, disrespect, and unprofessionalism. (ECF No. 20-10). According to Defendant,

James and Cunny met on June 13, 2023, before Plaintiff submitted his final FMLA leave request, and decided to terminate Plaintiff.

Plaintiff claims Defendant's reasons for his termination were pretext for discrimination based upon his sex (male), his race (African American) and his disability. Plaintiff also alleges that Defendant violated the FMLA by interfering with his rights and by terminating him for use of his rights. Defendant filed a motion for summary judgment arguing that Plaintiff has failed to state a prima facie case of race and gender discrimination because he was not meeting his employer's legitimate job expectations, and he has not proven that similarly situated employees who are not members of a protected class were treated favorably. Defendant also argues that it is entitled to summary judgment of Plaintiff's FMLA claims because he was not denied FMLA leave and because he has not proven a causal connection between his termination and his request for leave. In the alternative, Defendant has stated a legitimate non-discriminatory reason for Plaintiff's termination.

II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### III. Discussion of the Law

#### A. Race and Sex Discrimination Claims

In order to establish a prima facie case of race or sex discrimination, Plaintiff must show that (1) he was a member of a protected class; (2) he was meeting the employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (citing *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir.2005). If a prima facie case is established, a "burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for firing the plaintiff." *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir.2005). If the employer makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

It is undisputed that Plaintiff has established the first and the third prongs of a prima facie case. Defendant argues that Plaintiff was not meeting its expectations as an employee. However, there is evidence in the record that Plaintiff received average marks on his yearly evaluations and commendations for some of his work. The Court finds this evidence sufficient to create a question of material fact as to the second prong.

Plaintiff points to Monica Borchert and Tronika Earls to prove that similarly situated employees who were not African American or male were treated differently. Plaintiff claims that Borchert, who is female, and Earls, who is an African American female, were allowed to utilize their leave without providing the same level of explanation for their absence and without complying with the same policies. Plaintiff was never denied sick leave or FMLA leave, but he contends that he was asked more questions about his need for sick leave, and he was asked to provide advance notice whenever possible. Plaintiff claims that Borchert requested sick leave on the morning she was seeking leave, and it was grated. However, Borchert is not similarly situated to Plaintiff. Borchert is an Admission Specialist, not a Treatment Manager or Qualified Behavioral Health Professional. Plaintiff claims Earls was also granted leave without two-weeks advance notice as Defendant's written policy requires. While Earls is a Qualified Behavioral Health Professional, she requested 8 hours of vacation leave one week in advance, not sick leave or FMLA leave during a holiday. Plaintiff has not alleged that he was denied vacation leave by the Defendant. The Court finds that Plaintiff has failed to establish a prima facie case of race or sex discrimination.

Further, the Defendant has provided a legitimate reason for Plaintiff's termination, insubordination, disrespect and unprofessionalism. (ECF No. 20-10). The Defendant provides Smith's documentation of her interactions with Plaintiff after she became his supervisor. Plaintiff has not denied these interactions. (ECF No. 25-11). In his deposition, he merely states that she only worked with him for six days. There is no evidence, or even an inference, that Plaintiff was fired because of his race or his gender. Defendant's motion for summary judgment of Plaintiff's race and sex discrimination claims under Title VII and ACRA is granted.

B. FMLA Claims

Plaintiff has also alleged that Defendant interfered with his rights under the FMLA and retaliated against him by terminating him. "An employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' under the FMLA. 29 U.S.C. § 2615(a)(1). Interference with FMLA rights includes 'manipulation by a covered employer to avoid responsibilities under FMLA.'" *Chappell v. Bilco Co.*, 675 F.3d 1110, 1115 (8th Cir. 2012) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041,1050 (8th Cir. 2006)). "An FMLA interference claim occurs 'when an employer's action deters or attaches negative consequences to an employee's exercise of FMLA rights.'" *Chappell*, 675 F.3d at 1115-16 (quoting *Estrada v. Cypress Semiconductor, Inc.*, 616 F.3d 866, 871 (8th Cir. 2010)). "A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave...." *Id.* at 1116 (quoting *Rynders v. Williams*, 650 F.3d 1188, 1196 (8th Cir. 2011)) "Adequate notice requires 'enough information to put the employer on notice that the employee may need FMLA leave.'" *Id.* (quoting *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000)). "An employer may require that a request for leave is supported by certification from a health care provider." *Id.* (citing 29 U.S.C. § 2613(a)).

Plaintiff alleges that Defendant interfered with his FMLA rights by denying him leave on November 14, 2022. Plaintiff initially requested sick leave of two weeks on November 14, 2022 which was denied by Sherrie James because "there is no indication of a specific problem or medical condition he is experiencing to necessitate his being off for that length of time." (ECF No. 25-2). James also explained that Defendant could not let anyone else off for this period, the Thanksgiving holiday, because others had already been granted off and Plaintiff was needed at work. *Id.* Plaintiff then requested FMLA leave. Lavana Yates of Human Resources sent Plaintiff an email on November 14, 2022, acknowledging receipt of his FMLA request, explaining FMLA procedure, and notifying him that she had faxed his physician a certification form to be completed within 15 days. (ECF No. 25-4). James emailed Plaintiff on November 21, 2022 and explained that the information received from his physician was insufficient. In the email James stated, "According to the FMLA Fact Sheet #28G, a certification is considered 'insufficient if the

information provided is vague, unclear, or non-responsive,' Related to the content, it may include: appropriate medical facts about the condition; for leave for the employee's own 'serious health condition', information showing the employee cannot perform essential functions of the job." Plaintiff's FMLA request was approved on November 30, 2022 and he was paid for the period he was off. There is no evidence that Plaintiff's FMLA leave request, once made and the certification from Plaintiff's physician was provided, was denied. Requiring a physician certification form from a healthcare provider is not interference with FMLA rights. *See* 29 U.S.C.A. § 2613(a). An employer may require certification to include "a statement that the employee is unable to perform the functions of the position of the employee." 29 U.S.C.A. § 2613 (b)(3)(B).

Plaintiff also claims that he called his supervisor on December 23, 2022 and February 1, 2023 to tell him that he wanted to take leave on those days, but his supervisor failed to respond. (ECF No. 20-12 at RFP 7). There is no evidence of these calls. Plaintiff did not fill out the leave form, as he did in November, April, and June, to request FMLA leave. This allegation is insufficient to create a question of material fact as to whether Plaintiff was denied FMLA leave. Summary judgment of Plaintiff's FMLA interference claim is appropriate.

Plaintiff alleges that he was terminated in retaliation for exercising his FMLA rights and complaining about disparities in the application of the rights. The difference between the interference claims and the retaliation claim "is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent." *Stallings*, 447 F.3d at 1051. Absent direct evidence, Plaintiff's FMLA retaliation claim is evaluated under the *McDonnell Douglas* burden-shifting framework. *Id.* To establish a prima facie case, Plaintiff must show that 1) he engaged in protected conduct; 2) he suffered a materially adverse employment action; and 3) the materially adverse action was causally linked to the protected conduct. *Id.* If Plaintiff establishes a prima facie case, the burden shifts to the Defendant to proffer a non-discriminatory, legitimate justification for Plaintiff's termination and then back to Plaintiff to "either introduce evidence to rebut the employer's justification as a pretext for discrimination, or introduce

additional evidence proving actual discrimination." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001) (citations omitted). Plaintiff must prove this by a preponderance of the evidence. *See Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

Assuming that Plaintiff has stated a prima facie case, the Defendant has proffered a legitimate non-discriminatory justification for Plaintiff's termination as stated above. The employee may demonstrate pretext by two different methods.

> First, a plaintiff may succeed 'indirectly by showing that the employer's proffered explanation is unworthy of credence.' *Id.* (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002)). Under this method, the employee must rebut the employer's 'underlying factual claims' by establishing that the employer's explanation has no basis in fact. *Id.*
>
> Second, the plaintiff may prove pretext 'directly by persuading the court that a [prohibited] reason more likely motivated the employer.' *Id.* (quoting *Burdine*, 450 U.S. at 256 (1981)). Under this method, the employee rebuts 'the employer's ultimate factual claim regarding the absence of retaliatory intent.' *Id*. at 1121. The employee must demonstrate 'that sufficient evidence of intentional retaliation exists for a jury to believe the plaintiff's allegations and find that the proffered explanation was not the true motivating explanation.' *Id.* Thus, the employee 'may concede that the proffered reason for the termination, would have been a sufficient basis for the adverse action while arguing that the employer's proffered reason was not the true reason for the action.' *Id.* (emphasis in original).

*Stallings*, 447 F.3d at 1052 (8th Cir. 2006).

As stated above, Plaintiff has not denied that he engaged in insubordinate, disrespectful behavior toward Smith while she was his supervisor. Therefore, Plaintiff cannot rebut the Defendant's factual claims about the reason for his discharge. Plaintiff argues that his history of no disciplinary actions, Defendant's failure to discipline him for interactions with Smith before terminating him, and the timing of his termination are sufficient for a jury to find that insubordination was not the true reason for his termination. In his deposition, Plaintiff claims that he began having problems at work when Sherrie James was hired by the Defendant, a year and a half before his termination. (ECF No. 20-1 at 32:20-25). He felt that James was always telling him to do something and was making him do all the job assignments. *Id.* This occurred before he filed for FMLA leave. He admits that he received a write-up in October, 2022, which stated that the next step could be termination. (ECF No. 25 at ¶5; ECF No. 20-5). He admits that his 2021 evaluation included an Action Plan for Improvement in his "communication in general and

specifically with co-workers." (ECF No. 20-3 at p. 3). The Plan stated that "improvement should be noted within 30 days." *Id.* This evaluation was presented to Plaintiff on March 2, 2022. All of this happened before he filed for FMLA leave.

"Generally, more than a temporal proximity between protected activity and termination is required to present a genuine issue of fact for trial." *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1091 (8th Cir.2014) (citing *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012)). Plaintiff relies upon the two-day period between his second request for FMLA leave and his termination. "[E]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Id.* (quoting *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1001 (8th Cir.2011)). The problematic interactions with Smith occurred on May 19, May 22, and June 12, 2023. Plaintiff was officially terminated on June 16, 2023. As the court noted in *Malloy v. U.S. Postal Service*, an employee's "evidence of timing cannot be viewed in isolation .... [o]therwise, a problem employee on thin ice with the employer could effectively insulate herself from discipline by engaging in protected activity." *Id.* Plaintiff used FMLA leave in November 2022 with no repercussions "suggesting that the employer was not hostile to the protected activity." *Id.* (citing *Chappell*, 675 F.3d at 1118). Plaintiff's termination came after returning from a two-week vacation and immediately having a conflict with Smith. Any inference of discrimination arising from the temporal proximity of Plaintiff's termination and his request for leave, is undermined by the inference of nondiscrimination arising from the temporal proximity to the June 12th interaction with Smith. Plaintiff has failed to prove a genuine issue of material fact exists regarding whether the Defendant's true reason for Plaintiff's termination was retaliation for requesting FMLA leave.

C. ADA Claims

In his response to the motion for summary judgment, Plaintiff attempts to non-suit his ADA claims. Rule 41(a) provides that a plaintiff may voluntarily dismiss an action with or without a court order. It does not allow a plaintiff to voluntarily dismiss a claim as Plaintiff seeks to do here. Plaintiff has not provided a sufficient explanation for the need to take a dismissal and a motion for summary judgment

has been filed. *See Paulucci v. City of* Duluth, 826 F.2d 780, 783 (8th Cir. 1987) (Eighth Circuit looks to the four *Paulucci* factors in deciding whether a Rule 41(a)(2) motion should be granted. Two of the factors are whether a motion for summary judgment has been filed and sufficient explanation of the need.) Therefore, the Court denies Plaintiff's attempt to voluntarily dismiss his ADA claim.

Plaintiff has failed to prove a prima facie claim of discrimination under the ADA. The claim is dismissed.

IV. Conclusion

For these reasons, Defendant's motion for summary judgment (ECF No. 20) is GRANTED. The Clerk is directed to close the case. The jury trial scheduled for March 17, 2025 is canceled.

IT IS SO ORDERED this 26th day of February, 2025.

_____
James M. Moody Jr.
United States District Judge